UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL PATTERSON,

                    Plaintiff,                    **COMPLAINT**

      -against-

CITY OF NEW YORK, JAVAD VALAD,        **PLAINTIFF DEMANDS**
BRIAN HINTON, and MICHAEL BRENNAN,    **A TRIAL BY JURY**

                    Defendants.

-------------------------------------------------------------X

      Plaintiff Michael Patterson, by his attorney Michael Lumar, as and for his Complaint,

hereby alleges upon information and belief as follows:

## PARTIES, VENUE and JURISDICTION

      1.      At all times hereinafter mentioned, plaintiff Michael Patterson was an adult male

resident of New York County, in the State of New York.

      2.      At all relevant times hereinafter mentioned, defendant City of New York ("New

York City" or the "City"), was and is a municipal corporation duly organized and existing under

and by virtue of the laws of the State of New York and acts by and through its agencies,

employees and agents, including, but not limited to, the New York City Police Department

("NYPD") and its employees.

      3.      At all relevant times herein, defendant Brian Hinton (Tax 956739) was employed by

the City as a member of the NYPD. Hinton is sued in his individual capacity.

      4.      At all relevant times herein, defendant Javad Valad (Tax 937665) was employed by

the City as a member of the NYPD. Valad is sued in his individual capacity.

      5.      At all relevant times herein, defendant Michael Brennan was employed by the City

as a member of the NYPD. Brennan is sued in his individual capacity.

6.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and

1367, and 42 U.S.C. §§ 1983 and 1988.

7.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Southern

District of New York, where the plaintiff and defendant City of New York reside, and where the

majority of the actions complained of herein occurred.

## RELEVANT FACTS

The September 2016 Charges

8.     On September 9, 2016, plaintiff was lawfully present on West 144 Street in

Manhattan, New York.

9.     The plaintiff was not engaging in any unlawful conduct, nor was he engaged in any

conduct that could reasonably be viewed as unlawful.

10.     At this time, despite the absence of sufficient legal cause, plaintiff was seized and

forcibly handcuffed by the defendants or by members of the NYPD acting on behalf of the

individual defendants.

11.     Plaintiff, in defendants' custody, was thoroughly searched by NYPD officers at the

scene. The search of plaintiff did not yield any weapons or any other dangerous instruments.

12.     Despite the continuing absence of probable cause for his arrest, plaintiff was

nonetheless taken into the defendants' custody and transported to a local NYPD station house.

13.     Once at the station house, plaintiff was subjected to a strip search which failed to

yield any contraband.

14.     After a period of several hours, plaintiff, still in defendants' custody, was taken to

Manhattan Central Booking.

15.    While at Central Booking, plaintiff was again searched. Again no contraband or evidence suggesting plaintiff was engaged in criminal conduct was found.

16.    While in defendants' custody, defendant Hinton, with the help and complicity of the other defendants, completed arrest paperwork and executed a sworn statement in which he falsely claimed that, at about 6:00 pm  on the evening of September 9, 2016, he was in a patrol car with defendant Brennan when they observed plaintiff recklessly driving a dirt bike on a public roadway and that they saw plaintiff crash the bike into another vehicle.

17.    According to Hinton, the plaintiff fled the scene and was not immediately apprehended.

18.    Hinton also alleged that plaintiff's driver's license had been suspended multiple times.

19.    Later that evening, Hinton and Brennan, now also accompanied by defendant Valad, saw the plaintiff in the vicinity of where they claimed to have seen operating the dirt bike and placed him under arrest.

20.    Hinton's allegations concerning the plaintiff's operation of the dirt bike were false in that the plaintiff had not driven the dirt bike in question and was not driving the dirt bike as Hinton and Brennan alleged, and thus Hinton and Brennan's claim that they had seen plaintiff driving a dirt bike was fundamentally untrue.

21.    Hinton forwarded these false allegations to the New York County District Attorney's Office ("DANY"), or caused them to be forwarded, in order to justify plaintiff's arrest and persuade the DANY to initiate plaintiff's criminal prosecution.

22.     Defendant Hinton knew at this time that his and his fellow officers' claims and allegations were materially false.

23.     Based on defendants' false allegations, the NYDA commenced plaintiff's criminal prosecution by filing a criminal complaint that charged the plaintiff with one count each of reckless endangerment and aggravated unlicensed operation of a motor vehicle in the first degree.

The December 2016 Charges

24.     On or about December 15, 2016, the DANY obtained an indictment of the plaintiff on both the above charges and charges of criminal possession of a weapon in the second and third degrees.

25.     The weapons charges were based on defendant Valad's statements to the DANY that he had witnessed plaintiff discard an item in a garbage can just prior to his arrest on September 9, 2016.

26.     The defendants stated that they then found a gun in that garbage can, which they claimed was the item Valad said he saw the plaintiff discard.

27.     Plaintiff had not possessed the gun, either actively or constructively.

28.     Plaintiff had not discarded or placed that gun in the garbage can, as Valad claimed to have seen.

29.     Plaintiff had not discarded or placed any item in the garbage can, as Valad claimed to have seen.

30.     Valad's statements to the DANY, later repeated in court, to the effect that he had seen the plaintiff discard or place an item in the garbage can were knowingly false.

31.     The prosecution of the plaintiff on the two charges filed in September 2016

(aggravated unlicensed operation of a motor vehicle and reckless endangerment) and in December (criminal possession of a weapon in the second and third degree) continued thereafter under indictment number 5199/20165.

32.    The defendants knew and understood that in making its charging decisions the DANY was relying on the truthfulness and accuracy of their statements and testimony.

33.    The defendants continued to repeat and reinforce their false statements about having seen the plaintiff driving a dirt bike and discarding a weapon on September 9, 2016, for the duration of the plaintiff's criminal prosecution.

34.    At no time did any of the defendants correct their false statements or otherwise seek to undue the harm and injury inflicted by their initial lies and misrepresentations.

<u>The Prosecution</u>

35.    Plaintiff was prosecuted from September 10, 2016, until his criminal trial in Supreme Court, Criminal Term, New York County.

36.    Prior to trial the plaintiff moved for a *Frye* hearing to test the prosecution's expected reliance on what is known as the Forensic Statistical Tool ("FST").

37.    The motion court denied the plaintiff's motion.

38.    On or about September 5, 2018, a jury was selected and plaintiff's criminal trial began.

39.    On September 14, 2018, the jury returned a verdict convicting plaintiff of criminal possession of a weapon in the second degree (count one) and acquitting him of the charge of aggravated unlicensed operation of a motor vehicle (count three).

40.    The jury was instructed that they should not return a verdict on criminal possession

of a weapon in the third degree (count two) if they found plaintiff guilty of count one. The jury

also did not reach a verdict on reckless endangerment (count four). On the DANY's motion

counts two and four were then dismissed.

41.     On October 5, 2018, plaintiff was sentenced to a determinate sentence of seven

years imprisonment, to be followed by five years of post-release supervision.

42.     Plaintiff subsequently appealed his conviction to Appellate Division, First

Department.

43.     On April 21, 2022, the appellate court ruled that the motion court's denial of

plaintiff's motion for a Frye hearing was error and that this error was not harmless. Accordingly,

the appellate court (i) remanded the case to the trial court for a *Frye* hearing, and otherwise (ii) held

the balance of the "[plaintiff's] appeal in abeyance without reaching [his] remaining arguments"

pending the determination of the admissibility of the DNA evidence against the plaintiff. The

decision can be found at *People v. Patterson*, 204 A.D.3d 548, 548–49 (1ˢᵗ Dept 2022).

44.     The DANY then moved to dismiss the conviction.

45.     On or about August 15, 2022, the plaintiff, who had been transferred to City

custody from New York State custody, was released from custody with all charges dismissed.

46.     Plaintiff spent more than four years in prison as a result of this prosecution and

conviction.

47.     Although each of the defendants was aware that plaintiff's prosecution was

grounded on their materially false statements, at no time did any of the individual defendants take

any steps to intervene in the plaintiff's prosecution and imprisonment or to otherwise correct or

acknowledge ing the false statements they or their fellow officers had communicated to the

DANY, or to otherwise protect the plaintiff from any further harm caused by the defendants'
knowing violation of his constitutional rights.

48.    At all times relevant herein, the individual defendants were acting within the scope
of their employment, and their acts were done in furtherance of the City of New York's interests
and without legal justification or excuse.

## FIRST CAUSE OF ACTION

### (§1983 Fabricated Evidence/Denial of Fair Trial)

49.    Plaintiff repeats the preceding allegations as though stated fully herein.

50.    The individual defendants willfully and intentionally subjected plaintiff to the denial
of his right to a fair trial by fabricating evidence and communicating said materially false
statements and/or materially misleading factual claims to the DANY, thereby causing plaintiff to
suffer a substantial and irreparable deprivation of liberty.

51.    To the extent that any one of the individual defendants did not personally engage in
any of the aforementioned conduct, they witnessed this conduct or otherwise knew and
understood that such fabrications would be or had been communicated to prosecutors, had ample
opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

52.    By so doing, the individual defendants directly subjected the plaintiff to the denial
of a fair trial through the use of fabricated evidence or through the failure to intervene in such
misconduct by their fellow officers, and aided and abetted in the violation of, plaintiff's rights
under the Fourth, Sixth, and/or Fourteenth Amendments of the United States Constitution.

53.    By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and
caused plaintiff to suffer various injuries, including emotional and physical injuries, mental

anguish, the deprivation of his liberty, economic loss, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

### (§1983 Malicious Prosecution Claim)

54.     Plaintiff repeats the preceding allegations as though stated fully herein.

55.     The individual defendants willfully and intentionally caused the initiation of plaintiff's prosecution through the communication of materially false statements and/or materially misleading factual claims to the DANY.

56.     There was no probable cause for the prosecution of plaintiff for any of the charged offenses.

57.     The criminal prosecution was terminated in plaintiff's favor.

58.     The defendants acted with malice in bringing about and sustaining the plaintiff's prosecution.

59.     To the extent that any one of the individual defendants did not personally engage in any of the aforementioned conduct, they witnessed this conduct or otherwise knew and understood that such fabrications would be or had been communicated to prosecutors, had ample opportunity to intervene to prevent it from occurring or continuing to occur, and failed to do so.

60.     By so doing, the individual defendants directly caused the plaintiff to be maliciously prosecuted, or through their failure to intervene in such misconduct by their fellow officers, aided and abetted in the violation of, plaintiff's rights under the Fourth and/or Fourteenth Amendments of the United States Constitution.

61.     By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer various injuries, including emotional and physical injuries, mental

8

anguish, the deprivation of his liberty, economic loss, and the loss of his constitutional rights.

## THIRD CAUSE OF ACTION

### (§1983 Monell Claim)

62.     Plaintiff repeats the preceding allegations as though stated fully herein.

63.     Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD to guard against unconstitutional behavior and other misconduct.

64.     Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.  Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

65.     The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

9

66.     The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

67.     The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

68.     The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, including, but not limited to those protected by the Fourth and Fourteenth Amendments to the Constitution of the United States.

69.     In this case, the City was on notice that Lt. Valad had falsified records and directed others to do the same in order to downgrade reported crimes and that the NYPD Assistant Deputy Commissioner for Trials had rejected Valad's testimony as not credible. Yet Valad was left on the street where he had supervisory authority over Hinton and Brennan. Put simply, the City left a supervisor who had been found incredible and untruthful in a position where he was supervising and mentoring younger officers, which effectively ratified his prior misconduct and informed him that the NYPD was not troubled by dishonesty or outright lying by its officers.

67.     All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

68.    Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

69.    By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

[Remainder of Page Intentionally Blank]

**WHEREFORE**, the plaintiff demands judgment against defendants jointly and severally as follows:

  i. actual and punitive damages against each of the individual defendants in an amount to be determined at trial;

  ii. actual damages against the municipal defendant in an amount to be determined at trial;

  iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

  iv. such other relief as the Court deems just and proper.

Dated: New York, New York
       March 20, 2024

Respectfully submitted,

*Michael Lumer*

Michael Lumar, Esq.
Lumar Law Group
Attorneys for Plaintiff
14 Wall Street Suite1603
New York, New York 10005
(212) 566-506

12