UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
MICHAEL PATTERSON,

Plaintiff,

- against -

THE CITY OF NEW YORK, JAVAD VALAD, BRIAN HINTON, and MATTHEW BRENNAN,

Defendants.

--------------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 2106 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Michael Patterson brought this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City") and current or former New York City Police Department officers Brian Hinton, Matthew Brennan, and Javad Valad, asserting claims for malicious prosecution, denial of the right to a fair trial based on fabricated evidence, and municipal liability.[1] The claims specifically arise from Patterson's arrest in 2016 and subsequent criminal prosecution. Defendants now move for summary judgment. For the reasons stated herein, the motion is granted.

[1] In opposing defendants' instant motion for summary judgment, Patterson withdrew his claims against the City of New York and Officer Brennan, leaving only malicious prosecution and fabricated evidence claims against Officer Hinton and Officer Valad. ECF No. 68 at 17-18. The Court's use of the term "defendants" therefore refers to Officers Hinton and Valad.

## I. Factual Background[2]

On September 9, 2016, Officer Hinton and Officer Brennan were on patrol in Manhattan when they observed an individual operating a dirtbike hit a car and flee the scene. Defs. 56.1 ¶¶ 1-2. Later that day, Officers Hinton, Brennan, and Valad saw plaintiff Michael Patterson on West 144th Street, and Officer Hinton identified Patterson as the individual whom he believed he saw earlier operating the dirtbike. Defs. 56.1 ¶ 3; Pl. 56.1 ¶¶ 73-74. Patterson disputes the identification, maintaining that he did not operate a dirtbike and was not present at the collision that occurred earlier that day.[3] Pl. 56.1 ¶¶ 22-23. The Court does not and need not resolve that dispute to decide the present motion.

The parties similarly dispute certain details of what occurred after the officers approached Patterson. For purposes of

[2] The Court's recitation of the pertinent facts is derived primarily from the parties' Rule 56.1 Statements and admissible materials submitted in connection with the instant motion. Defendants submitted a Rule 56.1 Statement in support of their motion, and plaintiff filed a responsive Rule 56.1 Statement. See Defs. Local Civil Rule 56.1 Statement ("Defs. 56.1"), ECF No. 60; Pl. Resp. and Counter Statement ("Pl. 56.1"), ECF No. 71. Defendants then filed a counterstatement. See Defs. Resp. to Pl. Local Rule 56.1 Statement ("Defs. 56.1 Resp."), ECF No. 76. Where the Court relies on facts drawn from any of the 56.1 Statements, it has done so because the record evidence duly supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

[3] The record before the Court does not indicate whether Patterson moved to suppress the officers' identification of him as the dirtbike driver during his 2018 criminal trial.

the instant motion, it is sufficient that before the arrest, Patterson was standing outside with several other individuals, that Patterson moved away from the officers when they approached and proceeded westbound on 144th Street toward Eighth Avenue, and that Officer Hinton pursued him on foot. Pl. 56.1 ¶¶ 40-51; Defs. 56.1 ¶¶ 3-7; Defs. 56.1 Resp. ¶¶ 49-51. During the encounter, Officer Valad recovered a firearm from a garbage can along the route of the pursuit. Defs. 56.1 ¶¶ 5-7; Pl. 56.1 ¶ 58. Though Patterson denies possessing or discarding the firearm and relies in part on Officer Hinton's testimony that he did not observe Patterson throw anything into the garbage can, the Court again does not and need not resolve the parties' competing accounts.

The New York County District Attorney's Office ("DANY") initially filed a complaint only with respect to aggravated unlicensed operation of a motor vehicle and reckless endangerment, based on the dirtbike incident. Defs. 56.1 ¶ 9. Patterson was not charged at that time with possession of the recovered firearm. Id. Subsequently, New York's Office of the Chief Medical Examiner ("OCME") analyzed DNA that was recovered from the firearm and concluded that the DNA likely consisted of a mixture containing Patterson's DNA along with the DNA of two unknown individuals. ECF No. 68 at 5; Defs. 56.1 ¶ 10. On December 15, 2016, after

receiving the results of the OCME's analysis, the DANY obtained a single indictment charging Patterson with criminal possession of a weapon in the second and third degrees, aggravated unlicensed operation of a motor vehicle in the first degree, and reckless endangerment in the second degree. Defs. 56.1 ¶ 10; Pl. 56.1 ¶ 83; ECF No. 53 ¶¶ 26, 33.

The case then proceeded to trial. On September 14, 2018, a jury convicted Patterson of criminal possession of a weapon in the second degree and acquitted him of the aggravated unlicensed operation charge. Defs. 56.1 ¶ 13; Pl. 56.1 ¶ 84. The jury was instructed not to return a verdict on the third-degree possession charge if it convicted Patterson of second-degree possession, and it did not reach a verdict on the reckless endangerment charge. ECF No. 53 ¶¶ 42-43. Patterson was sentenced as a second violent felony offender to the statutory minimum of seven years' imprisonment and five years of post-release supervision. People v. Patterson, 204 A.D.3d 548, 548 (1st Dep't 2022); Defs. 56.1 ¶ 14; Pl. 56.1 ¶¶ 85-87; ECF No. 69-14. As a second violent offender convicted of Class C felony, Patterson faced a maximum of 15 years' imprisonment. ECF No. 69-14; Pl. 56.1 ¶¶ 85-87; N.Y. Penal Law §§ 70.04(3)(b), 265.03.

Patterson appealed his conviction. Pl. 56.1 ¶ 88; Defs. 56.1 Resp. ¶ 88. On April 21, 2022, the First Department held that the trial court erred in denying Patterson a Frye hearing concerning the use of the OCME's Forensic Statistical Tool ("FST") to evaluate the DNA evidence from the firearm, which the court referred to as the "strongest evidence tying defendant to the contraband." Patterson, 204 A.D.3d at 548-49 (quoting People v. Wortham, 37 N.Y.3d 407, 417 (2021)). In reaching that conclusion in 2022, the First Department relied on People v. Williams, 35 N.Y.3d 24 (2020), a New York State Court of Appeals decision issued two years after Patterson's trial. The First Department remanded the case for a Frye hearing and held the remainder of Patterson's appeal in abeyance without reaching his remaining arguments. Id. at 549; Defs. 56.1 ¶ 15; Pl. 56.1 ¶ 89. Instead of proceeding with the Frye hearing, the DANY exercised its discretion to dismiss the charges, and Patterson was released from custody on August 15, 2022. Defs. 56.1 ¶ 16; Pl. 56.1 ¶ 90. At that time, Patterson had been incarcerated for more than four years as a result of his conviction. Pl. 56.1 ¶ 91; Defs. 56.1 Resp. ¶ 91.

## II. Procedural Background

Patterson filed his original complaint on March 20, 2024, asserting claims against Officers Hinton, Valad, and Brennan, and

the City. ECF No. 1. On July 9, 2024, defendants filed an answer, and the case was referred to the Southern District of New York's mediation program pursuant to Local Rule 83.10, which did not result in a resolution of the case. ECF No. 17. Patterson then filed an amended complaint on August 20, 2024, ECF No. 18, and defendants answered the amended complaint on October 30, 2024, ECF No. 24. On December 19, 2024, the Court held a teleconference with the parties. Thereafter, the parties commenced discovery and continued to hold intermittent, though ultimately unfruitful, mediation conferences. ECF Nos. 27, 29, 33. Discovery closed on November 3, 2025. ECF No. 48.

On November 21, 2025, defendants filed a pre-motion letter in support of a proposed motion for summary judgment. ECF No. 50. Plaintiff opposed defendants' request on December 1, 2025. ECF No. 51. On December 10, 2025, the Court permitted defendants to bring their motion without a pre-motion conference and granted Patterson leave to amend by January 2, 2026, if, consistent with Rule 11, he could cure any alleged deficiencies raised by defendants. ECF No. 52. Plaintiff filed the Second Amended Complaint on January 2, 2026, asserting three causes of action: (i) denial of a fair trial based on fabrication of evidence under 42 U.S.C. § 1983; (ii) malicious prosecution under 42 U.S.C.

§ 1983; and (iii) municipal liability under 42 U.S.C. § 1983 pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). ECF No. 53 ("SAC").

Defendants moved for summary judgment on February 27, 2026, ECF No. 62 ("Mot."), and submitted a supporting declaration attaching exhibits and a Rule 56.1 Statement, ECF Nos. 60, 65. Plaintiff opposed on April 10, 2026, ECF No. 68 ("Opp."), and filed two supporting declarations and accompanying exhibits, along with a responsive Rule 56.1 Statement, ECF Nos. 69, 70, 71. In his opposition, plaintiff withdrew his claims against Officer Brennan and the City, leaving only the malicious prosecution and fabricated evidence claims against Officers Hinton and Valad. Opp. at 17-18. The remaining defendants filed a reply in support of their motion on May 8, 2026, ECF No. 74 ("Reply"), together with a supporting declaration and counterstatement to plaintiff's Rule 56.1 Statement, ECF Nos. 75-76.

**III. Legal Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "'the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Factual disputes that are irrelevant or unnecessary are disregarded. Anderson, 477 U.S. at 248.

"The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). When moving against a party who bears the ultimate burden of proof at trial, the movant meets this burden by pointing to an "absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986)). In assessing the record, courts must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. Sec. Ins. Co. of Hartford, 391 F.3d at 83.

Once the moving party has satisfied its burden, to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)

(quoting Fed. R. Civ. P. 56(e)). Conclusory allegations are insufficient to create a genuine issue. Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). The opposing party "may not merely rest on the allegations or denials of his pleading[.]" Wright, 554 F.3d at 266; see Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (explaining that a non-moving party must point to more than a mere "scintilla of evidence" to defeat summary judgment) (quoting Anderson, 477 U.S. at 252).

## DISCUSSION

Defendants seek summary judgment on several grounds. First, they contend that plaintiff's malicious prosecution claim fails because probable cause existed for his prosecution; Officers Hinton and Valad did not initiate the weapons prosecution; and because plaintiff cannot establish malice. Mot. at 4-7. Second, defendants argue that plaintiff has adduced no evidence that either Officer Hinton or Officer Valad knowingly fabricated evidence. Id. at 9-11. Finally, defendants maintain that Officers Hinton and Valad are entitled to qualified immunity. Id. at 7-8. The Court addresses each argument below.

## I. Malicious Prosecution

Defendants primarily contend that plaintiff's malicious prosecution claim fails because the grand jury indictment creates a presumption of probable cause that plaintiff has not, and cannot, rebut, and because the decision to pursue the weapons charges followed the DANY's receipt of independent DNA evidence from the OCME. Mot. at 4-7; Reply at 1-5. Plaintiff responds that Officers Hinton and Valad supplied false information to prosecutors and the grand jury, undermining the presumption of probable cause. Opp. at 8-14. Even viewing the record in plaintiff's favor, the Court concludes that plaintiff's claim is foreclosed by the undisputed sequence of events and governing presumptions of probable cause.

In the absence of federal common law, "the merits of a claim for malicious prosecution under § 1983 are governed by state law." Dufort v. City of New York, 874 F.3d 338, 350 (2d Cir. 2017). To prevail on a malicious prosecution claim under New York law, a plaintiff must establish "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in the favor of the accused, (3) the absence of probable cause for the criminal proceeding[,] and (4) actual malice." Alexander v. City of Syracuse, 132 F.4th 129, 158 (2d Cir. 2025) (internal quotation marks and citation

omitted). Section 1983 imposes the additional element of a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Id. (citations omitted). Because malicious prosecution claims brought under Section 1983 sound in the Fourth Amendment, probable cause must be assessed on a charge-by-charge basis. Chiaverini v. City of Napoleon, Ohio, 602 U.S. 556, 562-63 (2024). Here, the Court need not determine whether the ultimate dismissal of Patterson's criminal proceeding as a result of a discretionary decision by the DANY following remand from the First Department constitutes a favorable termination to satisfy the second prong of the malicious prosecution analysis. Assuming it does, in any event, plaintiff cannot rebut the existing presumption of probable cause.

**a. Probable Cause**

Probable cause is a complete defense to a malicious prosecution claim, and a grand jury indictment creates a presumption that probable cause existed for the prosecution. Savino v. City of New York, 331 F.3d 63, 72-73 (2d Cir. 2003). A plaintiff may overcome that presumption only by establishing that the indictment was produced by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Id. at 72 (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)).

That burden is shouldered by the plaintiff, and "mere conjecture and surmise" that police misconduct produced the indictment is insufficient. Id. at 73 (internal quotation marks and citation omitted).

**i. Weapons Charges**

The principles elucidated above, combined with the undisputed chronology of events, readily dispose of plaintiff's claim insofar as it is based on the weapons charges. Following Patterson's arrest on September 9, 2016, he was charged only with aggravated unlicensed operation of a motor vehicle and reckless endangerment. Defs. 56.1 ¶ 9. He was not, at that time, charged with possession of the firearm that was recovered from the garbage can during his arrest. Id. Thereafter, the OCME conducted DNA testing on the firearm. Opp. at 5; Defs. 56.1 ¶ 10. Only after the DANY received those results did a grand jury return the sole indictment in this case, which charged Patterson with, inter alia, criminal possession of a weapon in the second and third degrees. Defs. 56.1 ¶ 10.

The resulting single indictment establishes a presumption of probable cause for the weapons prosecution. Further, Patterson ultimately proceeded to trial, where a jury convicted him of criminal possession of a weapon in the second degree. Defs. 56.1

¶¶ 13-14. The court sentenced Patterson, as a second violent felony offender, to seven years' imprisonment. Patterson, 204 A.D.3d at 548. Under New York law, "[c]onviction at trial, even if overturned on appeal, creates a presumption of the existence of probable cause in the underlying criminal proceeding." Sibblies v. City of New York, 219 A.D.3d 403, 404 (1st Dep't 2023); see also Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (same). As to the offense that ultimately resulted in Patterson's conviction and sentence, then, he faces a presumption of probable cause arising not only from the grand jury's indictment, but also from the jury's subsequent finding of guilt beyond a reasonable doubt. The subsequent appellate proceedings do not negate the presumption of probable cause or otherwise disturb that conclusion. The First Department did not determine that the DNA evidence was false, that the officers had fabricated evidence, or that probable cause was absent. It instead issued a narrow ruling that because of an intervening decision of the New York State Court of Appeals, the trial court should have conducted a Frye hearing to determine the admissibility of the FST-derived DNA evidence, and held the rest of Patterson's appeal in abeyance. Patterson, 204 A.D.3d at 548-49.

Further, Patterson has not adduced sufficient evidence to overcome the presumption of probable cause. Patterson may deny possessing or discarding the firearm and attempt to identify differences in the officers' recollections of the events of September 9, see Opp. at 8-11, but a disagreement over what occurred does not establish that the indictment was procured through fraud or perjury. Sibblies is instructive. There, following a traffic stop, the plaintiff was prosecuted for assault, resisting arrest, obstructing governmental administration, and harassment. 219 A.D.3d at 404. A jury acquitted her of assault and harassment but convicted her on the resisting arrest and obstructing charges, and the New York State Court of Appeals later overturned those convictions on speedy trial grounds. Id. In the ensuing civil action, the First Department held that the trial convictions created a presumption of probable cause and that the discrepancies between the plaintiff's and the officers' accounts of the arrest did not establish the fraud or perjury necessary to overcome that presumption. Id. at 404-05. As the court explained, the relevant distinction is between actual bad faith misconduct and a "simple conflict of stories or mistaken memories." Id. (quoting Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003)).

The distinction outlined in Sibblies is of particular significance here because the weapons prosecution did not rest solely on the officers' observations. The undisputed record reflects that: (i) Patterson was not initially charged with firearm offenses; (ii) the OCME subsequently and independently produced DNA results linking Patterson to the firearm; and (iii) only thereafter did the DANY obtain the sole indictment containing the weapons charges. Defs. 56.1 ¶¶ 9-10. There is no allegation, much less any evidence, that Officers Hinton or Valad performed or otherwise manipulated the OCME's analysis. The OCME's DNA determination is thus critical precisely because it was both intervening and corroborative. More specifically, the OCME analysis was intervening because it arose independently after Patterson's arrest and before he was indicted on any weapons charge. And it was corroborative because it connected Patterson to the very firearm recovered during the encounter, plainly refuting any argument that officers apprehended – and the DANY prosecuted – the wrong individual.[4] The independent DNA evidence materially distinguishes this case from one in which a disputed police account supplied the only evidence linking the accused to

[4] Indeed, Patterson acknowledges that the OCME determined that the DNA mixture recovered from the firearm most likely contained his DNA, along with the DNA of two unknown individuals. Opp. at 5.

the charged crime. Accordingly, Patterson has not overcome the presumption of probable cause as to the weapons charges brought against him.

**ii. Remaining Charges**

Probable cause for the remaining charges against Patterson must be considered separately. See Chiaverini, 602 U.S. at 562-63. Patterson's claim with respect to the non-weapons charges nevertheless fares no better. The same grand jury that returned the weapons charges also indicted Patterson for aggravated unlicensed operation and reckless endangerment. Defs. 56.1 ¶ 10. Those charges thus similarly carry a presumption of probable cause. Savino, 331 F.3d at 72.

Patterson attempts to overcome that presumption by denying that he operated the dirtbike and by identifying perceived deficiencies and inconsistencies in Officer Hinton's account of the arrest and the absence of certain records. See Opp. at 8-10; Pl. 56.1 ¶¶ 22-35. However, Patterson's theory necessarily asks that this Court ignore the independent forensic evidence subsequently obtained in the case. The OCME determined that the recovered firearm contained Patterson's DNA, along with that of two other individuals. Opp. at 5; Defs. 56.1 ¶ 10. Such evidence powerfully corroborates the original identification of Patterson

as the individual driving the dirtbike earlier that day: the person whom Officer Hinton identified and the police apprehended was independently linked, through forensic DNA evidence, to the firearm recovered during the very same encounter.

Put simply, the objective DNA evidence vitiates Patterson's theory that Officer Hinton simply fabricated his identification of Patterson and caused an innocent bystander to be swept into the prosecution. There is no room for Patterson to argue that Officer Hinton falsely identified an uninvolved person, only for independent DNA testing to later connect that same person to the firearm recovered during the encounter. Patterson may dispute whether he operated the dirtbike, but his denial does not and cannot erase the independent forensic evidence confirming a connection between him and the contraband recovered during the encounter that followed Officer Hinton's identification. The record therefore does not permit an inference, let alone a reasonable inference, that Officer Hinton invented Patterson's identity or that the grand jury's indictment was produced by fraud, perjury, suppression of evidence, or other bad-faith police conduct. Savino, 331 F.3d at 72-73.[5]

[5] Patterson's reliance on Rentas v. Ruffin, 816 F.3d 214 (2d Cir. 2016) is of no moment. Rentas does not hold that a disputed identification establishes fraud or perjury sufficient to overcome an indictment's presumption of probable

It further bears emphasis that no portion of Patterson's post-conviction incarceration on which this litigation is based stemmed from the non-weapons charges. The jury acquitted Patterson of aggravated unlicensed operation,[6] the remaining non-weapons counts were dismissed, and his seven-year sentence was imposed solely on his conviction for second-degree criminal possession of a weapon as a second violent felony offender. Pl. 56.1 ¶¶ 84-87; Def. Resp. 56.1 ¶¶ 84-87. Accordingly, Patterson has failed to rebut the presumption of probable cause as to the non-weapons charges as well.

**b. Independent Prosecutorial Judgment**

Patterson's malicious prosecution claim cannot proceed insofar as it seeks to hold Officers Hinton and Valad responsible for the weapons prosecution for an additional reason. While police officers may be liable for malicious prosecution when they play an active role in causing a prosecution, the intervening exercise of

cause. That case involved additional physical and documentary evidence suggesting that the defendants had fabricated reports to conceal their own misconduct. Rentas, 816 F.3d at 221. Here, by contrast, Patterson's denial is confronted by both Officer Hinton's contrary account and independent forensic evidence linking Patterson himself to the recovered firearm.

[6] Patterson's eventual acquittal on the aggravated unlicensed operation charge "does not negate the existence of probable cause." Nadal v. City of New York, 105 A.D.3d 598, 599 (1st Dep't 2013). It similarly does not establish, much less even suggest, that the jury rejected Officer Hinton's identification of Patterson. The acquittal establishes only that the prosecution failed to prove aggravated unlicensed operation beyond a reasonable doubt. See, e.g., Carlisle v. City of New York, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007).

independent prosecutorial judgment ordinarily breaks the causal chain unless the plaintiff produces evidence that the prosecutor was "misled or pressured" by the police. Dufort, 874 F.3d at 352 (quoting Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)). If a prosecution relies on "independent, untainted information" to establish probable cause, the officer is not responsible for the prosecution that follows. Rentas, 816 F.3d at 221. With respect to the weapons charges, the undisputed chronology of Patterson's prosecution reflects that very "independent, untainted information."

Patterson was arrested on September 9, 2016, but the DANY did not initially charge him with possession of the firearm. Defs. 56.1 ¶ 9. As previously discussed, the OCME then performed an independent DNA analysis, and only after the DANY received those results did the grand jury return a single indictment. Defs. 56.1 ¶¶ 9-10. Unlike the independent evidence at issue in Rentas, which appeared only within allegedly false reports prepared by the defendant officers, the OCME analysis here was generated entirely independently of Officers Hinton and Valad. Compare Rentas, 816 F.3d at 220-21. There is no suggestion here that either officer manipulated the OCME's analysis or pressured the DANY to pursue weapons charges. Though Patterson argues that the officers

supplied the DANY with false accounts concerning the arrest, Opp. at 12-13, the undisputed chronology nevertheless remains: the DANY initially declined to bring weapons charges and did not do so until it received independent forensic evidence connecting Patterson to the firearm. The same OCME evidence that corroborates Patterson's connection to the weapon thus also serves as an intervening evidentiary event between any alleged misconduct and the DANY's decision to pursue the weapons prosecution. Even apart from the presumptions of probable cause, the forensic evidence confirming Officer Hinton's identification of Patterson and the DANY's subsequent decision sever the causal connection between any allegedly unlawful conduct by defendants and the weapons prosecution.

Accordingly, because Patterson has failed to adduce evidence supporting a lack of probable cause and, with respect to the weapons prosecution, causation, defendants are entitled to summary judgment on the malicious prosecution claim.[7]

---

[7] Given that the failure to rebut the presumption of probable cause dooms Patterson's claim, the Court need not address the remaining malicious prosecution factors, including whether defendants acted with malice, nor address the issue of qualified immunity. Carlisle v. City of New York, 2007 WL 998729, at *3 n. 48 (S.D.N.Y. Apr. 2, 2007).

**II. Fabrication of Evidence**

Defendants next contend that Patterson's denial of a fair trial claim fails because he has adduced no evidence that either Officer Hinton or Officer Valad deliberately fabricated evidence. Mot. at 9-11. Specifically, defendants contend that Patterson cannot establish fabrication merely by denying that he operated the dirtbike or possessed the firearm, and that any identified inconsistencies at most raise the possibility of mistaken observations or recollections. Id. Patterson argues that his claim rests on alleged inconsistencies between Officer Hinton's account and other evidence concerning the officers' efforts to locate the dirtbike operator, as well as differences between Officer Valad's account of Patterson's conduct near the garbage cans and Officer Hinton's observations while pursuing Patterson. Opp. at 15-17. The Court agrees with defendants.

A Section 1983 claim for denial of the right to a fair trial because of fabricated evidence exists when (i) an investigating official (ii) fabricates information (iii) that is likely to influence a jury's verdict, (iv) forwards that information to prosecutors, and (v) the plaintiff suffers a deprivation of life, liberty, or property as a result. Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (citations omitted). A

plaintiff must offer evidence from which a jury could reasonably conclude that the officer "knowing[ly], as opposed to mistaken[ly]," created false information. Barnes v. City of New York, 68 F.4th 123, 129 (2d Cir. 2023); see also Garnett, 838 F.3d at 280 (explaining that an arrestee must show "that the officer created false information"). "The mere fact that the parties present conflicting evidence does not mean that one side's evidence was fabricated," Davis-Guider v. City of Troy, 2024 WL 5199294, at *3 (2d Cir. Dec. 23, 2024), and it is insufficient to show only that the officer's account was inaccurate or the product of mistaken identification. See Steinbergin v. City of New York, 2022 WL 1231709, at *3 (2d Cir. Apr. 27, 2022) (summary order) (concluding that plaintiff's "simpl[e]" denial that he sold drugs to an undercover officer could only support, at most, an inference of mistaken identification, not knowing fabrication).[8]

**a. Hinton**

Patterson argues that Officer Hinton fabricated his identification of Patterson as the individual who operated the dirtbike earlier on September 9, 2016, denies operating the

[8] See also Morse v. Fusto, 804 F.3d 538, 547 (2d Cir. 2015) (emphasizing that a plaintiff must prove that a fabrication was "made knowingly"); Sibblies, 219 A.D.3d at 406 (rejecting plaintiff's federal fair trial claim on the ground that "the difference in testimony between plaintiff and defendants does not show that the officers fabricated their account of plaintiff's arrest").

dirtbike, and maintains he was not present at the location of the accident. Pl. 56.1 ¶¶ 22-23, 81. He also points to apparent differences between Officer Hinton's and Officer Valad's recollections of events leading up to Patterson's arrest. Opp. at 8-10, 16. As discussed above, however, any suggestion that the officers identified and apprehended the wrong individual is completely dismantled by the OCME's DNA analysis, which independently connected Patterson to the firearm recovered during his arrest and provided objective corroboration of the original identification. Accordingly, Patterson has not raised a genuine issue of fact as to whether Officer Hinton knowingly fabricated his identification.[9]

**b. Valad**

Officer Valad testified that after Patterson ran westbound on 144th Street, Patterson ran toward a garbage can, reached downward, made a throwing motion, and caused Officer Valad to hear rustling in the garbage can. Pl. 56.1 ¶¶ 60-63; Def. 56.1 Resp. ¶¶ 60-63.

---

[9] Even if Officer Hinton's identification of Patterson was mistaken – which it was not, as confirmed by the OCME's DNA determination – that mistake would not establish that Officer Hinton knew that the identification was false when he conveyed it to prosecutors. See Steinbergin, 2022 WL 1231709, at *1. Similarly, that Officer Hinton did not recall certain details of the arrest years later does not establish that he consciously invented recognizing Patterson in the first place. Taranto v. Cnty., 2026 WL 880643, at *18 (S.D.N.Y. Mar. 31, 2026) ("And to the extent Plaintiffs argue that discrepancies [between deposition testimony and certain documents] alone are enough to create a question of fact, that argument also lacks merit.").

Patterson denies discarding anything and emphasizes that Officer Hinton, who was pursuing him from ten to twelve feet away, did not see anything in Patterson's hands or see him throw anything into the garbage cans. Opp. at 10-11; Pl. 56.1 ¶¶ 48-55. From those differences, Patterson argues that a jury could find Officer Valad's account deliberately fabricated. Opp. at 10-11, 15-17.

Again, there is no support for the inferential leap that Patterson invites this Court to make. An officer's failure to observe what another officer says he observed does not, without more, establish that the latter officer knowingly invented his observation. Officer Hinton and Officer Valad were not identically positioned during the encounter and pursuit, and their failure to perceive the exact same sensory details does not support a reasonable inference of conscious falsity. Redd v. City of New York, 2023 WL 12029126, at *7 (E.D.N.Y. Jan. 3, 2023) (granting the defendants' motion for summary judgment on fabricated evidence claims and explaining that "a witness's inconsistent statements do not amount to fabricated evidence"). Again, because the objective evidence is determinative here, the Court need not resolve the parties' competing testimony as to precisely what Patterson did or did not do while passing the garbage cans. Officer Valad recovered a firearm from the garbage can, and subsequent OCME forensic

testing linked Patterson to the firearm. Defs. 56.1 ¶¶ 7-10. Regardless of which officer observed what, the independent DNA evidence linking Patterson to the very firearm that Officer Valad recovered corroborates the officers' account and leaves no evidentiary basis to infer that Officer Valad knowingly fabricated his observation.

Patterson attempts to minimize the significance of the OCME analysis by arguing, curiously, that "the appellate court threw it out." Opp. at 16-17. The First Department did no such thing. As discussed above, it held only that the trial court should have granted Patterson's request for a Frye hearing concerning the FST-derived DNA evidence before being admitted and remanded the matter for that specific purpose. Patterson, 204 A.D.3d at 548-59. Again, in reaching that conclusion in 2022, the First Department relied on People v. Williams, 35 N.Y.3d 24 (2020), a Court of Appeals decision issued two years after Patterson was convicted and sentenced in 2018. Far from rejecting the DNA evidence as false or unreliable, the First Department described it as the "strongest evidence tying defendant to the contraband." Patterson, 204 A.D.3d at 538-49 (quoting People v. Wortham, 37 N.Y.3d 407, 417 (2021)). The First Department did not determine that the DNA evidence was false or fabricated, nor did it hold

that the officers created inaccurate or misleading information. Its ruling therefore provides no support for the proposition that Officer Hinton or Officer Valad knowingly invented their accounts.

Accordingly, defendants are entitled to summary judgment on plaintiff's fabricated evidence claim.

**CONCLUSION**

For the foregoing reasons, defendants' motion is granted. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 59 and close this case.

Dated: September 2, 2026
New York, New York

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE